IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD KYLE,

        Plaintiff,

    v.

APOLLOMAX, LLC, O'NEILL, LLC
d/b/a O'NEILL INNOVATIONS, and
MICHAEL O'NEILL,

        Defendants.

Civil Action No. 12-152-RGA

APOLLOMAX, LLC and O'NEILL, LLC
d/b/a O'NEILL INNOVATIONS,

        Defendants/Counterclaim-
        Plaintiffs,

    v.

RONALD KYLE,

        Plaintiff/Counterclaim-
        Defendant,

    and

DOUGLAS PORCELLI,

        Counterclaim-Defendant/
        Counterclaim-Plaintiff.

## MEMORANDUM OPINION

Christopher Viceconte, Esq., GIBBONS PC, Wilmington, DE; John Q. Lewis, Esq., TUCKER
ELLIS LLP, Cleveland, OH; Seth J. Linnick, Esq., TUCKER ELLIS LLP, Cleveland, OH.

        Attorneys for Defendants/Counterclaim-Plaintiffs Apollomax, LLC, O'Neill, LLC d/b/a
O'Neill Innovations, and Michael O'Neill.

Seth J. Reidenberg, Esq., TYBOUT, REDFEARN & PELL, Wilmington, DE; Alan L. Frank, Esq., ALAN L. FRANK LAW ASSOCIATES, P.C., Jenkintown, PA; Susan B. Pliner, Esq., ALAN L. FRANK LAW ASSOCIATES, P.C., Jenkintown, PA.

     Attorneys for Plaintiff/Counterclaim-Defendant Ronald Kyle and Counterclaim-Defendant/Counterclaim-Plaintiff Douglas Porcelli.

November ⎰, 2013

*Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Ronald Kyle ("Kyle") initiated legal action against Michael O'Neill ("Mr. O'Neill"),
Apollomax, LLC, and O'Neill, LLC d/b/a O'Neill Innovations (collectively, the "Defendants")
on February 8, 2012. (D.I. 1). On March 14, 2013, the Defendants filed an answer to Kyle's
claims and counterclaimed against Douglas Porcelli ("Porcelli"), one of Kyle's colleagues and a
former Apollomax employee. (D.I. 11). Porcelli answered with affirmative defenses on
December 13, 2012 and he also counterclaimed against the Defendants, alleging six causes of
action: breach of contract, fraudulent misrepresentation, unjust enrichment, libel, slander *per se*,
and promissory estoppel. (D.I. 121). The Defendants filed the instant motion for summary
judgment against Porcelli on May 17, 2013, seeking the dismissal of all six counterclaims. (D.I.
174). The motion is fully briefed. (D.I. 175, 189 & 200). For the reasons that follow the Court
will grant the Defendants' motion for summary judgment as to Counts I to III and V and will
deny the Defendants' motion for summary judgment as to Counts IV and VI.

## I. BACKGROUND

In August 2011, Mr. O'Neill hired Porcelli to be the Vice President of Retail Sales for
O'Neill, LLC d/b/a O'Neill Innovations ("ONI"). (D.I. 121 at 14; D.I. 189-2 at 3). Mr. O'Neill
is the sole member of ONI, which is a Delaware LLC that acts as a holding company for Mr.
O'Neill's intellectual property. (D.I. 189-1 at 3). In addition, ONI owns 85% of Apollomax,
LLC–another Delaware LLC that sells Maxfit® gloves. (*Id.* at 4).

Although he began working for ONI without a written contract, Porcelli claims that he
requested a base salary and a partial ownership stake in ONI as part of his overall compensation
package in his initial employment discussions with Mr. O'Neill. (D.I. 189 at 4). During

1

subsequent discussions Porcelli asserts that he reiterated his request for a 5% ownership stake in ONI and that Mr. O'Neill agreed in principle, thereby forming a contract despite the fact that the parties never reduced any of the terms to writing. (*Id.* at 5). Since Porcelli never received any ownership interest, he claims a breach of contract. Porcelli also asserts Mr. O'Neill's unfulfilled promise to give him 5% of ONI forms the basis for several other claims. The Defendants, on the other hand, deny that any oral contract ever existed. (D.I. 175 at 2).

The business relationship was brief, and Mr. O'Neill fired Porcelli in January 2012 after approximately three months of employment. (D.I. 121 at 15). Shortly after Mr. O'Neill terminated Porcelli, Mr. O'Neill sent an email to Kyle and several others titled "The devil is at work" with a link to a newspaper article reporting that Porcelli was arrested for stalking. (D.I. 189-3 at 4). Several heated emails were exchanged, and this lawsuit followed.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). However, "the burden on the moving party may be discharged" if it can show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

2

133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the
nonmoving party then "must come forward with 'specific facts showing that there is a genuine
issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita*,
475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party,
however, will not be sufficient for denial of a motion for summary judgment. *Anderson*, 477
U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to
reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing
on an essential element of its case with respect to which it has the burden of proof, the moving
party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. DISCUSSION

### A. Count I – Breach of Contract

Porcelli claims that he and Mr. O'Neill entered into an oral contract wherein "Porcelli
was to receive five percent of ONI, a reduced salary and reimbursement of expenses in exchange
for his employment with ONI as Vice President of Retail Sales." (D.I. 189 at 8-9). Mr. O'Neill
never gave Porcelli a 5% ownership interest in ONI, and that forms the basis for Porcelli's breach
of contract claim. For the reasons stated below, Porcelli's breach of contract claim fails.

The elements for a breach of contract claim under Delaware law are: "(1) a contractual
obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the
plaintiff[]." *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011). In order for
there to be a contractual obligation, there must first be a valid contract. The required elements to
prove a valid contract are: (1) the intent of the parties to be bound; (2) sufficiently definite terms;

3

and (3) consideration. *Otto v. Gore*, 45 A.3d 120, 138 (Del. 2012).

Porcelli cannot satisfy the second element necessary to establish the existence of a valid contract. The evidence in the record, including the deposition of Porcelli himself, shows that Porcelli and Mr. O'Neill did not lay out sufficiently definite terms to create a valid contract. When asked if the terms of the deal were reduced to writing, Porcelli admitted that "[t]he terms were under negotiation," and that it never progressed past that point. (D.I. 189-2 at 5). Porcelli also seemed unsure as to the percent ownership in ONI that he claims Mr. O'Neill promised him. (D.I. 176-1 at 12 (noting that when Porcelli was asked what percentage Mr. O'Neill promised him during their first meeting he responded "[u]ndefined")). Porcelli attempts to bolster his position with the deposition of Mr. Bromley, a non-party witness who was employed by Mr. O'Neill, but Mr. Bromley's recitation of the deal's terms was similarly uncertain. Mr. Bromley stated that Mr. O'Neill told him that Porcelli would be compensated with "[o]wnership," but Mr. Bromley was never present at any meeting where Porcelli and Mr. O'Neill discussed compensation and he did not know what the percent ownership would be or any other terms of the deal. (D.I. 189-4 at 3). Porcelli was also unable to definitively state when his promised 5% interest would vest under the contract because the contract was never finalized. (D.I. 176-1 at 11 ("Q. Okay. So the answer is, you don't know when you were supposed to get the 5 percent? A. My answer is, I would believe that it would be in the contract that I was asked–would be asked to sign if I was to enter into the contract. Q. Right. So you believe these terms would have been set forth in a contract that was never drawn up; correct? A. Yes.")).

Additionally, it does not appear that Mr. O'Neill and Porcelli even mentioned the subject of performance during their talks. If Mr. O'Neill had any performance metrics in mind for

4

Porcelli to receive a percent ownership of ONI, they were never communicated to Porcelli. (*Id.* at 9-10 ("Q. And my question to you is, what were the quantifiable objectives that you had to satisfy in order for [Mr. O'Neill] to write this contract to give you 5 percent? A. They were never identified to me by [Mr. O'Neill].")). This is not surprising because Porcelli stated that there was no discussion of what he would have to provide to Mr. O'Neill in exchange for the promised 5% ownership. (*Id.* at 9 ("Q. So you didn't discuss what you had to give up in order to get that 5 percent at that time? A. No. There was no discussion on that.")). According to Porcelli, whatever his end of the deal was going to be–perhaps in terms of job performance, sales numbers, minimum length of time employed at ONI, etc.–"was to be in the contract." (*Id.*). Because Porcelli admits that there were no discussions related to performance, except for what was going to be negotiated and put into a contract in the future, there was no valid contract.

Interpreting the facts in the light most favorable to Porcelli, he is only able to show that he and Mr. O'Neill had some negotiations about Porcelli's compensation and that there might have been some discussion about giving Porcelli an ownership stake in ONI. Nothing was ever reduced to writing, the terms of the deal were not sufficiently defined, and the performance that Porcelli would give Mr. O'Neill in exchange for the ownership stake was not agreed upon. These preliminary discussions and negotiations cannot form the basis for a valid contract, and without a contract there can be no breach of contract. The Defendants' motion for summary judgment with respect to Count I is granted.

## B. Count II – Fraudulent Misrepresentation

A claim for fraudulent misrepresentation requires: (1) a false representation (usually one of fact); (2) that the defendant knew or believed the representation was false; (3) that the false

5

representation was intended to induce the plaintiff to act or refrain from acting; (4) that the plaintiff's action or inaction was taken in justifiable reliance upon the representation; and (5) that the plaintiff was damaged by such reliance. *Carrow v. Arnold*, No. 182-K, 2006 WL 3289582, at *8 (Del. Ch. Oct. 31, 2006), *aff'd*, 933 A.2d 1249 (Del. 2007). Oral promises or statements of future intent are generally insufficient to satisfy the first element of fraudulent misrepresentation. *MicroStrategy, Inc. v. Acacia Research Corp.*, No. 5735-VCP, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010). Indeed, if the plaintiff pleads a claim of promissory fraud based on "promises or predictive statements of future intent" as opposed to past or present facts, a higher threshold is imposed. *Id.* ("In this situation, the plaintiff 'must plead specific facts that lead to a reasonable inference that the promisor had no intention of performing at the time the promise was made.'").

Porcelli's claim for fraudulent misrepresentation fails because he cannot establish the first two elements. Under the first element, Mr. O'Neill's alleged promise to Porcelli that "as part of his compensation package, he *would* receive a percentage of ONI" is nothing more than an oral statement of future intent. (D.I. 189 at 11 (emphasis added)). Porcelli repeatedly states in his deposition that the "terms [of the deal] were under negotiation," that Mr. O'Neill "acknowledged that we were going to work on a deal," and that Porcelli and Mr. O'Neill "would work on [the deal]" when Mr. O'Neill got out of the hospital. (D.I. 189-2 at 5). These are all promises of future intent, not present facts, and cannot form the basis for a fraudulent misrepresentation claim because there is no evidence that Mr. O'Neill did not intend to perform the promise at the time it was made. *See MicroStrategy Inc.*, 2010 WL 5550455, at *15 ("Generally, prior oral promises or statements of future intent do not constitute 'false representation[s] of fact' that would satisfy the

6

first element of fraudulent misrepresentation." (alteration in original)).

Additionally, under the second element, Porcelli has put forth no evidence that Mr. O'Neill did not intend to give Porcelli a percentage of ONI at the time of the discussion. Porcelli's argument seems to be that Mr. O'Neill has "a pattern of this behavior" because Porcelli claims Mr. Bromley was promised 10% of ONI but never received it. (D.I. 189 at 11). Porcelli did not provide any factual support for this allegation, however, and the Court did not find any in the pages of Mr. Bromley's deposition that accompanied Porcelli's Opposition Brief. In the alternative, Porcelli argues that an issue of fact exists as to whether the statements made by O'Neill were true or false. (*Id.* at 12 ("O'Neill either did not make the statement or made the statement, but never intended to actually give Porcelli five percent of the company.")). Again, this unsupported conclusion does not itself create a dispute as to a material fact. There is simply no way to view the scant evidence that would permit a jury to reasonably find for Porcelli on this issue, and there do not appear to be any disputed material facts. Accordingly, the Court will grant the Defendants' motion for summary judgment as to Count II.

### C. Count III – Unjust Enrichment

To establish a claim for unjust enrichment, a plaintiff must prove: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). In his Answer and Counterclaim, Porcelli alleges that "Apollomax's sales increased as a result of Porcelli's efforts to market Apollomax products" and that the Defendants were "enriched by revenue from Apollomax's increased sales." (D.I. 121 at 17). Porcelli further asserts that he was impoverished because he never received his 5% stake in

7

ONI, that there was no justification for the Defendants to be enriched at his expense, and that he has no adequate remedy at law. (*Id.*). The Defendants counter that Porcelli has failed to prove any enrichment of the Defendants because Porcelli admitted that he has no idea how many gloves Apollomax was selling at the beginning or end of his employment, nor how much of the increase in sales, if any, is attributable to Porcelli's efforts.[1] (D.I. 175 at 12-13). In addition, the Defendants contend that even if they were enriched by Porcelli's contributions, there is no evidence that it was an unjust enrichment or that Porcelli was impoverished because ONI paid Porcelli a salary for his efforts.

Determining whether any issues of material fact are in dispute is difficult because the record evinces an absence of relevant facts. The portion of Porcelli's Opposition Brief that addresses unjust enrichment does not contain a single citation to the record. Instead, it is replete with unsupported arguments that the Defendants were enriched, that Porcelli was correspondingly impoverished, and that there was no justification for the Defendants' actions.[2] (D.I. 189 at 14-15). As the Defendants have stated, "[t]here is no evidentiary support for this

---

[1] Porcelli's Opposition Brief did not clarify the basis for his claim that Apollomax's sales increased. When Porcelli was asked at his deposition if he knew how much in sales he was responsible for he stated: "I don't know. Didn't have access to the information." (D.I. 176-1 at 16).

[2] As support for the enrichment element, Porcelli's Opposition Brief explains that "Porcelli provided his expertise in sales and marketing" which allowed him "to develop various sales proposals, go on sales calls, create various presentations and assist in marketing ONI and Apollomax." (D.I. 189 at 14). To satisfy the impoverishment element, Porcelli claims that "he accepted a lower salary in exchange for a percentage of ONI that was never delivered by [Mr.] O'Neill," and thus Porcelli "did not receive all that was promised to him in exchange for the work that [he] provided . . . ." (*Id.* at 14-15). Similarly, Porcelli relies on the conclusory statement that "[Mr.] O'Neill had no justification for his failure to deliver on his promise" to satisfy the absence of justification element. (*Id.* at 15).

8

claim, [either] as it was pled [or] as it is now being argued, and it should be dismissed as a matter of law." (D.I. 200 at 7). By pointing out Porcelli's lack of supporting evidence, the Defendants have met their burden. *See Celotex Corp.*, 477 U.S. at 325 (finding that moving party's burden may be discharged by showing that "there is an absence of evidence to support the nonmoving party's case"). Therefore, in order to survive a motion for summary judgment Porcelli is required to come forward with evidence to support each element of the unjust enrichment claim. Porcelli has failed to do so, and the Defendants' motion for summary judgment is granted as to Count III.

### D. Count IV – Libel

Defamation is defined as "that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him." *Spence v. Funk*, 396 A.2d 967, 969 (Del. 1978). To succeed on a defamation claim under Delaware law, a plaintiff must establish five elements: "(1) [a] defamatory communication; (2) publication; (3) [that] the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury." *Wright v. Pepsi Cola Co.*, 243 F. Supp. 2d 117, 124 (D. Del. 2003). The requirements for establishing the injury prong are reduced in light of the general rule that "any publication which is libelous on its face is actionable without pleading or proof of special damages." *Spence*, 396 A.2d at 970 ("[P]roof of damage proximately caused by a publication deemed to be libelous need not be shown in order for a defamed plaintiff to recover nominal [o]r compensatory damages."). These defamation elements incorporate both libel and slander, with the difference between the two torts being that "libel is written defamation and slander is oral defamation." *Id.*; *Adams v. Selhorst*, 779 F. Supp. 2d 378, 395-96 (D. Del. 2011).

9

Porcelli has provided enough evidence that, when viewed in the light most favorable to Porcelli, a jury could reasonably find for him on the issue of libel. Under the first element required to prove defamation, the communications at issue appear to be defamatory in nature. Mr. O'Neill composed an email titled "The devil is at work" with a link to an article discussing Porcelli's arrest on stalking charges. (D.I. 189-3 at 4). Additionally, in a subsequent email, Mr. O'Neill quipped, "[i]f you are not Charlene's dark stranger then I have been hoodwinked." (D.I. 189-3 at 3-4). In the context of Mr. O'Neill's previous email which contained a link to Porcelli's stalking arrest in Middletown, this statement seems to be accusing Porcelli of stalking Charlene, Kyle's wife. (D.I. 189 at 16). A jury could reasonably find both statements to be defamatory.

Moreover, the second prong is met because Mr. O'Neill published the statements by sending the first email to Kyle, and the second email to Kyle and Charlene. (D.I. 189-3 at 2-4). There is a factual dispute under the third prong as to whether one of the defamatory communications referred to Porcelli. Mr. O'Neill denies that his email titled "The devil is at work" referred to Porcelli, and instead claims it was a reference to a prophesy he had previously discussed with Charlene. (D.I. 176-1 at 32-33). Porcelli disagrees based on the context and the content of the email, and the outcome of the dispute will likely turn on a credibility determination that must be made at trial. As for the fourth element, the emails did not leave much to the imagination. It is difficult to believe that Kyle and Charlene, both of whom were familiar with Porcelli, did not understand the defamatory character of the emails. Finally, Porcelli alleges that he "suffered significant harm to his reputation and professional image" as a result of the statements in question. (D.I. 121 at 18). This is sufficient under Delaware law, at least to state a claim for the recovery of nominal damages, because "any libel (that is, a written publication

10

which defames plaintiff) is actionable without special damages." *Spence*, 396 A.2d at 971.

Accordingly, the Court will deny the Defendants' motion for summary judgment as to Count IV.

### E. Count V – Slander *Per Se*

Slander *per se* is a special category of defamation that is actionable without proof of special damages.[3] As stated above, slander differs from libel because slander is an oral defamation whereas libel is a written defamation. To qualify as slander *per se*, a special category of slander, the defamatory statement must: "(1) malign one in a trade, business or profession, (2) impute a crime, (3) imply that one has a loathsome disease, or (4) impute unchastity to a woman." *Spence*, 396 A.2d at 970.

Porcelli's slander *per se* claim is unavailing. In Porcelli's Answer and Counterclaim, he bases his claim "[u]pon information and belief" that Mr. O'Neill orally communicated defamatory statements to Porcelli's friends, neighbors, and business contacts, and that those parties understood and believed those statements. (D.I. 121 at 18). Porcelli's Opposition Brief does not expand on this position, but rather only discusses written emails that Mr. O'Neill sent to Porcelli and others. (D.I. 189 at 15-17). There is simply no mention, let alone citation to supporting facts, that would substantiate the claim that Mr. O'Neill made oral statements about Porcelli that were defamatory in nature. In fact, when asked at his deposition if he had spoken with anybody else about the newspaper article that discussed Porcelli's arrest, Mr. O'Neill responded that he had not, but that he might have sent the email to one of his other employees, Mr. Bromley. (D.I. 189-1 at 10). The Defendants pointed out this Count's deficiencies in their

---

[3] The legal standard for defamation is provided in Section III.D, *supra*.

Reply Brief, stating that Porcelli only "offers unsupported legal arguments and conclusions" that

"do not amount to evidence and cannot create genuine issues of material fact to defeat summary

judgment." (D.I. 200 at 8). The Defendants are correct. *See Celotex Corp.*, 477 U.S. at 325

("[T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence

of evidence to support the nonmoving party's case."). The Defendants' motion for summary

judgment as to Count V is granted.

### F. Count VI – Promissory Estoppel

Promissory estoppel "is an equitable remedy designed to enforce a contract in the interest

of justice where some contract formation problem would otherwise prevent enforcement." *Weiss*

*v. Nw. Broad., Inc.*, 140 F. Supp. 2d 336, 344-45 (D. Del. 2001) (internal quotations and citation

omitted). A promissory estoppel claim requires proof of the following elements by clear and

convincing evidence: (1) the defendant made a promise; (2) with the intent to induce action or

forbearance on the part of the promisee; (3) the promisee relied on the promise; and (4) the

promisee suffered injury as a result. *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 87 (Del. 1998).

Interpreting the evidence in the light most favorable to Porcelli, a reasonable jury could

find in his favor, and thus summary judgment must be denied. Under the first element, the

Defendants argue that, at most, Mr. O'Neill indicated he would engage in future negotiations

with Porcelli regarding the 5% ownership stake in ONI. (D.I. 175 at 11). But Porcelli has

provided evidence that he requested an ownership stake in ONI at the initial meeting where Mr.

O'Neill hired Porcelli (D.I. 189-2 at 3), that Mr. O'Neill gave his "tacit acceptance"[4] to a 5%

---

[4] Porcelli defined a "tacit acceptance" as a "verbal agreement" whereby Mr. O'Neill
stipulated that he "didn't have a problem" with the 5% proposal. (D.I. 189-2 at 5).

12

ownership stake (*Id.* at 5), and that Mr. O'Neill promised to write up a contract memorializing the 5% ownership when he returned from his hospital stay. (*Id.* at 4). The conflicting accounts of whether a promise was made give rise to a factual dispute that cannot be determined at the summary judgment stage.

When analyzing the second element, a jury could reasonably believe that the motivation for Mr. O'Neill's promise or "tacit acceptance" of the 5% stake was to entice Porcelli to accept ONI's employment offer to be the Vice President of Retail Sales. Mr. O'Neill said that he hired Porcelli to "bring a higher level of intellectual thinking to the company" and to utilize the "big company experience" Porcelli gained while working for Kimberly Clark. (D.I. 189-1 at 6-7). This type of expertise can be expensive, and Porcelli stated that a 5% stake was on the lower end of what is typical in the industry for a vice president of sales. (D.I. 176-1 at 14).

A jury could also reasonably conclude that Porcelli relied on this promise and that he suffered injury as a result–the third and fourth elements required to prove promissory estoppel. According to Porcelli, he raised the promise on several occasions, but Mr. O'Neill's health problems intervened and this prevented Porcelli from compelling Mr. O'Neill to memorialize the terms of the agreement in writing. (D.I. 189-2 at 5 ("[Mr. O'Neill] stipulated in return that he didn't have a problem with [the terms of the deal]. He stipulated that the timing wasn't right, that he was going into the hospital, that he would work on it when he returned.")). Porcelli relied on the promise by continuing to work for ONI, even though no written contract existed, and he has presented evidence that this was a reasonable decision in light of Mr. O'Neill's health issues. Finally, Porcelli worked for ONI and received less in compensation than he believes he was promised, which a jury could reasonably believe constitutes an injury. Accordingly, the Court

13

denies the Defendants' motion for summary judgment as to Count VI.[5]

## IV. CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment is granted

as to Counts I to III and V, and the Defendants' motion for summary judgment is denied as to

Counts IV and VI. A separate Order, consistent with this Memorandum Opinion, will be entered.

---

[5] The parties are to submit simultaneous letters with authorities no later than November 15, 2013, addressing whether there is a right to a jury trial on this Count.

14