IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RONALD KYLE,

      Plaintiff,

v.

APOLLOMAX, LLC, O'NEILL, LLC
d/b/a O'NEILL INNOVATIONS, and
MICHAEL O'NEILL,

      Defendants.

APOLLOMAX, LLC and O'NEILL, LLC
d/b/a O'NEILL INNOVATIONS,

      Defendants/Counterclaim-
      Plaintiffs,

v.

RONALD KYLE,

      Plaintiff/Counterclaim-
      Defendant,

and

DOUGLAS PORCELLI,

      Counterclaim-Defendant/
      Counterclaim-Plaintiff.

Civil Action No. 12-152-RGA

## MEMORANDUM ORDER

Before the Court is "Defendants/Counterclaim Plaintiffs' Motion to Preclude the Proffered Expert Testimony of Charles S. Lunden" (D.I. 177) and associated briefing (D.I. 180, 191 & 204). The Defendants' Motion to Preclude is **GRANTED IN PART**.

It is worth setting out how we have gotten to where we are. Mr. Lunden wrote a report dated February 15, 2013. (D.I. 181-1 at 2-16). It was shoddy. He learned as much at his deposition. He then produced an amended report on May 16, 2013. (D.I. 191-5). The Motion to Preclude ensued the next day. In due course, on September 10, 2013, the Court held a *Daubert* hearing, at which Mr. Lunden testified. With the agreement of the parties, the Court reviewed *in camera* various documents protected by attorney-client privilege. (D.I. 225, 226 & 227). Mr. Lunden produced another amended report on November 4, 2013. (D.I. 234).

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The portion of Mr. Lunden's expert opinion that assumes Mr. Kyle is entitled to 50% of Apollomax's profits and opining on the damages suffered as a result has no basis in fact and is excluded pursuant to Rule 702. To the extent Mr. Kyle proposes to testify that there was some oral agreement that he would get 50% of the profits, the Apollomax Operating Agreement ("Operating Agreement") expressly prohibits it. (D.I. 11-1, § 10.1 ("This Agreement may be amended by, and only by, a written resolution setting forth in detail the amendment and signed by sufficient Members to reflect a Supermajority vot[ing] interest of LLC Members in favor of said amendment.")). Mr. Lunden will be permitted to testify regarding the damages, if any, that resulted from Mr. Kyle's entitlement to 15% of Apollomax's profits.

2

The Operating Agreement explicitly governs how the profits were to be divided between Mr. Kyle and Mr. O'Neill, the only two members of Apollomax. Section 6.1 states, "net profits, net losses, and other items of income, gain, loss, deduction and credit of the LLC shall be allocated among the Members ratably in proportion to each Member's LLC Unit Percentage." (*Id.* § 6.1). According to Section 3.1, Mr. O'Neill owns 85% of the LLC Units and Mr. Kyle owns the remaining 15%. (*Id.* § 3.1). Despite this clear statement of ownership interest, Mr. Kyle cites Section 6.3 of the Operating Agreement for the proposition that "the Apollomax Operating Agreement specifically provides that the LLC members may agree to make distributions to the members in the amounts and proportions that they deem appropriate." (D.I. 191 at 19). But in order to invoke this provision the members must have acted "by resolution issued pursuant to this agreement." (D.I. 11-1, § 6.3). Section 3.5 governs the actions taken by LLC members and states, "Unless another percentage is given elsewhere in this operating agreement or by state law, all LLC member votes on any matter shall require an affirmative vote in interest by LLC members of LLC Unit[s] in excess of 50% of the outstanding total to pass or approve the motion, resolution, or otherwise take action by the LLC members." (*Id.* § 3.5c). Because Mr. Kyle only owns 15% of the LLC Units, he lacked the votes to pass any such resolution without Mr. O'Neill's support, and he has offered no explanation as to why Mr. O'Neill would agree to such a resolution. Mr. Kyle also failed to produce evidence that any resolution altering the distributions was passed.

In addition, Mr. Kyle argues that "Mr. Lunden is entitled to presume the truth of the allegations contained in Plaintiff's Amended Complaint, including Plaintiff's contention that, pursuant to an agreement between Mr. Kyle and Mr. O'Neill, Mr. Kyle was entitled to fifty (50) percent of the profits of Apollomax." (D.I. 191 at 19). Mr. Kyle's brief did not provide any

3

citation to the record in support of this separate agreement that purports to give him a 50% interest in Apollomax's profits. It seems clear there is no such written agreement. Alleged oral agreements cannot be used to alter the Operating Agreement.[1] (D.I. 11-1, § 10.1). It may be that Mr. Lunden based his opinion partially on the financial statements of Apollomax and Mr. Kyle. Specifically, Mr. Lunden "noted that the distributions between Mr. O'Neill and Mr. Kyle for 2011 were equal, and concluded that this was consistent with the Plaintiff's allegation that Mr. Kyle was entitled to fifty (50) percent of Apollomax's profits." (D.I. 191 at 19). Upon further examination of Mr. Kyle's tax records at his deposition, however, Mr. Lunden admitted that Mr. Kyle's Schedule K-1 indicated that he received only a 15% share of the profits for 2011. (D.I. 181-1 at 34-36; D.I. 181-2 at 18). It was the guaranteed payments received by Mr. O'Neill and Mr. Kyle, not the profits, that were split evenly between the two members in 2011. (D.I. 181-2 at 18). Finally, Mr. Kyle openly acknowledged his 15% ownership stake when he wrote an email to Michelle O'Neill, the Director of Accounting, on January 8, 2012 requesting "[a] separate check in the amount of my equity of 15%." (*Id.* at 15).

Therefore, for the reasons outlined above, Mr. Lunden is precluded from assuming that Mr. Kyle owned a 50% interest in Apollomax's profits when testifying on the issue of damages because the facts do not support this position.[2]

---

[1] Thus, while an expert can base an opinion on assumed facts, it is the Court's duty to exclude such opinion testimony when the assumed facts cannot be proven.

[2] The last document in the record about damages is Mr. Lunden's second amended report, and all the briefing preceded it. As Mr. Lunden's reports have been amended, some of the issues raised by Defendants have been mooted. Some of the issues that were raised (such as what the lost corporate opportunity was) will be fleshed out through testimony. As Plaintiff has argued, these may be more in the nature of cross-examination fodder than *Daubert* issues. If Defendants want to raise any remaining issues about Mr. Lunden's report, they should submit a letter identifying the issues with an argument by the close of business on November 26, 2013.

Entered this 21st day of November, 2013.

/s/ Richard G. Andrews
United States District Judge